IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LEROY GREENE, JR.,

    Petitioner,

v.                                                                        Civil Action No. 3:10cv53

GENE JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Petitioner Leroy Greene, Jr., a Virginia inmate proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 Pet.").[1] (Docket No. 1.) Greene challenges his convictions in the Circuit Court for Fairfax County ("Circuit Court") for robbery, rape, and abduction with intent to defile. Greene contends that he is entitled to relief upon the following grounds:

| | |
|---|---|
| Claim 1 | The evidence was insufficient to support Greene's conviction for robbery. |
| Claim 2 | "The trial court violated [Greene's] Fifth and the Fourteenth Amendment rights to Due Process when it allowed the introduction of DNA evidence, over the petitioner's objections, when the Commonwealth was not able to establish a proper chain of custody for the handling of the DNA evidence." (§ 2254 Pet. Attach. 11.) Greene relies upon the following facts in support of this claim: |
| (a) | Detective Norton could not identify the individual at the front desk of the Northern Lab of the Virginia Department of Forensic Science ("Northern |

---

[1] 28 U.S.C. § 2254(a) states in relevant part:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

|      | Lab") with whom he left the victim's Physical Evidence Recovery Kit ("PERK") kit. |
|------|---|
| (b)  | When Detective Norton received the PERK kit back from the Northern Lab, he stored it in his personal property room. |
| (c)  | When Detective Norton received Greene's buccal swabs back from the lab, he stored them in a filing cabinet in his unlocked office where other individuals may have had access to them. |
| (d)  | After the DNA testing of the PERK kit was completed, but prior to its admission at trial, three envelopes were attached to the PERK kit. The prosecution could not explain who had attached the envelopes to the PERK kit. |
| (e)  | When Detective Norton obtained the package containing the buccal swabs back from the Richmond lab, unidentified initials and tape were on the package. |
| (f)  | Errors were "committed by the forensic science department during the analyzation of the evidence." (§ 2254 Pet. Attach. 16.) |

| Claim 3 | Greene was denied the effective assistance of counsel. Trial counsel failed to move the Circuit Court for funds to hire a forensics expert to "challenge[] the analyzing process [and] the errors that were committed, and [who] would have shown the juror's [sic] how easily a DNA sample is contaminated." (§ 2254 Pet. Attach. 23.) |
|---|---|

Johnson filed a Motion to Dismiss (Docket No. 10), providing Greene with appropriate Roseboro[2] notice (Docket No. 13). Johnson concedes that Greene has exhausted his grounds for federal habeas corpus relief. Johnson contends that Greene's claims lack merit and should be dismissed. Greene responded to the motion, and the matter is ripe for adjudication. Jurisdiction exists under 28 U.S.C. §§ 636(c) and 2254. For the reasons that follow, the Court will GRANT the Motion to Dismiss (Docket No. 10) with respect to Claims 1 and 3, but will DENY the motion with respect to Claim 2. Because it appears that the federal constitutional aspects of Claim 2 are unexhausted and possibly procedurally defaulted, it is appropriate to discuss the

---

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

doctrines of exhaustion and procedural default prior to turning to the procedural history of the case and the merits of Claims 1 and 3.

## I. Exhaustion and Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all "available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state's courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation

demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (*quoting Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (*citing Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts).

"Furthermore, where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that he properly presented his claim to the state courts in accordance 'with the state's chosen procedural scheme.'" *Reyes v. Kelly*, No. 3:09cv23-HEH, 2009 WL 3109856, at *2 (E.D. Va. Sept. 25, 2009) (*quoting Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994)). "Virginia's chosen procedural scheme requires prisoners seeking habeas relief to utilize a standard form prescribed by statute." *Id.* (*citing* Va. Code § 8.01-655)). The standard "form is divided into sections, each of which contains simple prompts directing the prisoner to provide the basic information necessary to review his conviction." *Mallory*, 27 F.3d at 992. "The failure to properly complete the form with respect to a particular claim may preclude a finding that the inmate fairly presented the claim to the Virginia courts." *Reyes*, 2009 WL 3109856, at *2 (*citing Mallory*, 27 F.3d at 995–96. "For example, in *Mallory* although the inmate asserted that appellate counsel was ineffective in various parts of his submissions, the inmate had failed to list such a claim in the appropriate space on the statutorily prescribed form for setting forth the grounds for relief." *Id.* (*citing Mallory*, 27 F.3d at 995–96.) The United States Court of Appeals for the Fourth Circuit concluded that the petitioner could not be deemed to have fairly presented a claim of ineffective assistance of appellate counsel to the Supreme Court of Virginia, when he

4

failed to list such a claim in the appropriate space on the statutorily prescribed form. *See id.* (*citing Mallory*, 27 F.3d at 995-96).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1).[2] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

## II. Procedural History

In the early morning of March 4, 2004, 58-year-old Catherine Leger was forced from her car by an unknown man. The man demanded money. He then directed Leger behind an

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (*citing Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

5

apartment building and raped her. In December of 2006, a jury convicted Greene of robbery, rape, and abduction with intent to defile in connection with the above events.

### A. Direct Appeal

Greene appealed his convictions. On appeal to the Court of Appeals of Virginia, Greene asserted, *inter alia*, that the evidence was insufficient to establish his guilt with respect to the rape and robbery charges and that the Circuit Court erred by admitting the DNA evidence against Greene because the prosecution did not establish a proper chain of custody for such evidence. With respect to the DNA evidence, Greene noted:

> In Mr. Greene's case, the Commonwealth introduced into evidence the Physical Evidence Recovery Kit (Commonwealth's exhibit 26), the Requests for Laboratory Analysis (Commonwealth's exhibits 27 and 29), buccal swabs from Mr. Greene (Commonwealth's exhibit 28), and two certificates of analysis referencing the above exhibits (Commonwealth's exhibits 30 and 31). All of these exhibits were objected to by Mr. Greene because of the failure to demonstrate a proper chain of custody.

((Resp't's Br. Supp. Mot. Dismiss ("Resp't's Br.") Ex. B at 25–26.) Greene argued that the admission of the foregoing evidence violated state law. Greene did not mention the federal Constitution in his challenge to the admission of the DNA evidence.

On October 26, 2007, the Court of Appeals of Virginia denied Greene's appeal. *Greene v. Commonwealth*, No. 0736-07-4 (Va. Ct. App. Oct. 26, 2007). The Court of Appeals of Virginia cited only Virginia law in rejecting Greene's challenge to the admission of the DNA evidence. Furthermore, the Court of Appeals of Virginia concluded that a number of Greene's substantive arguments pertaining to the admission of the DNA evidence were barred because he

had failed to raise the arguments to the Circuit Court as required by Virginia Supreme Court Rule 5A:18.[3]

> In his petition, appellant also argues the Commonwealth failed to establish a proper chain of custody for the victim's physical evidence recovery kit ("PERK") and appellant's buccal swabs because 1) at trial, there were envelopes attached to the box containing the PERK and 2) Detective Norton was uncertain where in his police car he placed the PERK in transit from the hospital to police headquarters, was unable to identify, by name, the persons to whom he handed the PERK, and was initially uncertain at trial where the buccal swabs were located. A close review of the record reveals appellant did not make these arguments at trial. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Ohree v. Commonwealth*, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); *see* Rule 5A:18.

*Id.* at 8-9 n.2.

Thereafter, Greene petitioned the Supreme Court of Virginia for an appeal. With respect to DNA evidence, Greene once again cited only Virginia law in asserting that the admission of the DNA evidence was improper. On September 24, 2008, the Supreme Court of Virginia refused Greene's petition for appeal. *Greene v. Commonwealth*, No. 080605 (Va. Sept. 24, 2008).

B.  **State Habeas Proceedings**

On June 5, 2009, Greene filed a petition for a writ of habeas corpus with the Supreme Court of Virginia, wherein he claimed:

---

[3] That rule provides, in pertinent part:

> No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

Va. Sup. Ct. R. 5A:18.

7

| | |
|---|---|
| Claim A | "No rational trier of facts could have found the essential elements of robbery proved beyond a reasonable doubt, therefore, conviction violates the Fourteenth Amendment." (State Habeas Pet. ¶ 14(a).) |
| Claim B | "Trial court violated Fourteenth Amendment right to due process when it allowed the introduction of DNA evidence that was not properly introduced through chain-of-command-rules." (State Habeas Pet. ¶ 14(b).) |
| Claim C | "Ineffective assistance of trial counsel violated Sixth and Fourteenth Amendments." (State Habeas Pet. ¶ 14(c).) |

Despite the fact that he referenced the Fourteenth Amendment in conjunction with his challenge to the admission of the DNA evidence, Greene represented that Claim B was the same claim that he had raised on direct appeal to the Court of Appeals of Virginia and the Supreme Court of Virginia. Greene further represented that his ineffective assistance of counsel claim was the only claim that had not been presented previously to a Virginia court.

On October 23, 2009, the Supreme Court of Virginia denied that petition. *Greene v. Warden of Keen Mountain Corr. Ctr.*, No. 091152 (Va. Oct. 23, 2009). The Supreme Court of Virginia concluded Greene's challenges to the sufficiency of the evidence and the introduction of the DNA evidence "are barred because these issues were raised and decided in the trial court and on direct appeal from the criminal convictions, and therefore, they cannot be raised in a habeas corpus petition." *Id.* at 1–2 (*citing Henry v. Warden*, 576 S.E.2d 495, 496 (Va. 2003)). The Supreme Court of Virginia further concluded that Greene's ineffective assistance of counsel claim lacked merit. *Id.* at 2.

## III. Standard of Review

This Court's authority to grant habeas corpus relief is governed by 28 U.S.C. §§ 2254(d) and 2254(e)(1). Under Section 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that this standard requires federal habeas petitioners to demonstrate not only that the state court's decision was erroneous or incorrect, but also that it was unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

## IV. Alleged Error in Admission of the DNA Evidence

In Claim 2, Greene contends that his right to due process was violated when the Circuit Court allowed the introduction of the DNA evidence despite the prosecution's inability to establish a proper chain of custody. Johnson cites 28 U.S.C. § 2254(d), and argues that Claim 2 "must be dismissed because the Virginia Court of Appeals considered the claim on the merits and expressly rejected it." (Resp't's Br. ¶ 17.) Johnson is incorrect. No Virginia Court has addressed the merits of Greene's present claim that the admission of DNA evidence denied Greene due process in violation of the Fourteenth Amendment. *See supra* Part II.A. Moreover,

Johnson provides no explanation as to why under the relevant due process jurisprudence such a claim lacks merit.[4] Additionally, Johnson does not address those aspects of Greene's argument that contend the DNA evidence was improperly admitted based on the alleged mishandling of the biological evidence prior to the occurrence of the DNA testing.[5] Accordingly, Johnson's Motion to Dismiss Claim 2 will be DENIED.

Nevertheless, it is doubtful that the federal constitutional aspects of Claim 2 have been fairly presented to the state courts in accordance with Virginia's "'chosen procedural scheme.'" *Reyes*, 2009 WL 3109856, at *2 (*quoting Mallory*, 27 F.3d at 995). As noted previously, *see supra* Part II.A, on direct appeal Greene challenged the admission of the DNA evidence as a violation of state law. When Greene again challenged the admission of the DNA evidence during the state habeas proceedings, he misrepresented that this was the same challenge to the admission of DNA evidence that he had raised on direct appeal. Given Greene's misleading comments on the statutorily prescribed form, it is understandable that "the Supreme Court of Virginia rejected th[is] claim[] on the ground that [it] had previously been decided on direct appeal." *Reyes*, 2009 WL 3109856, at *3. "Permitting review of the federal constitutional aspects of Claim[] [2], under the present circumstances, would inappropriately 'signal[ ] litigants

---

[4] Of course, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see Frazier v. Johnson*, No. 3:09cv262, 2010 WL 1006902, at *3 (E.D. Va. Mar. 16, 2010). Thus, any complaint by Greene that the Circuit Court erred under Virginia law in admitting the DNA evidence does not provide a cognizable basis for federal habeas corpus relief.

[5] As noted *supra* in Part II, the Court of Appeals of Virginia concluded that a number of Greene's arguments challenging the chain of custody were barred under Rule 5A:18 of the Rules of the Supreme Court of Virginia because he failed to raised these objections at trial. Johnson has not placed any procedural bar at issue in these federal habeas proceedings. The Court declines to raise the defense of procedural default *sua sponte* at this juncture.

that they may ignore state procedures and still expect the federal courts to hear [their] claims.'"

*Id.* at *4 (third and fourth alterations in original) (*citing Mallory*, 27 F.3d at 996). In light of the current state of the record, the Court will ORDER further briefing with respect to Claim 2. *See infra* Part VII.

## V. Sufficiency of the Evidence

In Claim 1, Greene contends that the evidence was insufficient to convict him of the robbery of Leger. A federal habeas petitioner is entitled to relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.[6] The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. It is up to the trier of fact to resolve conflicts in the testimony and to weigh the evidence. *Id.*

The Court of Appeals of Virginia aptly summarized the evidence of Greene's guilt with respect to the rape and robbery charges as follows:

> [T]he evidence proved that sometime after midnight 58-year-old Catherine Leger returned to her apartment. As she was sitting in her car, appellant knocked on the driver's side window. Leger rolled down the window and turned to see appellant, a tall, muscular man. Appellant commanded, "Get out of the car, bitch."

---

[6] In Virginia, robbery "is defined as the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation." *Williams v. Commonwealth*, 685 S.E.2d 178, 180 (Va. 2009) (internal quotations omitted).

11

> Appellant demanded money from Leger and cursed angrily when she said she had only a small amount of cash. Leger surrendered her purse because she feared physical violence. Appellant ordered Leger behind the apartment building. He followed and told her to remove her clothes. She complied because she "felt like [she] didn't have any choice" and was afraid of "being physically abused for not responding in what he thought was an appropriate way." After she undressed, appellant told her to lie down on the ground, at which time he inserted his penis into her vagina and engaged in sexual intercourse. Leger suffered a long vaginal tear during the intercourse, which she described as painful and lasting 'a very, very, very long time." After sexual intercourse, appellant left.
>
> Forensic tests compared DNA found in Leger with appellant's DNA. Test results disclosed that appellant could not be eliminated as a contributor of the DNA found on Leger's vaginal/cervical swabs. The certificate of analysis reported the following:
>> The probability of randomly selecting an unrelated individual with a DNA profile matching that developed from the sperm fraction of the vaginal/cervical swabs at the PowerPlex 18 BIO loci is 1 in greater than 6.0 billion (which is approximately the world population) in each of the Caucasian, Black and Hispanic populations.

*Greene*, No. 0736-07-4 at 1-2 (alteration in original). The foregoing evidence overwhelmingly demonstrates Greene was the individual who raped and robbed Leger.

Greene persists there was no evidence that he ever touched the victim's purse. However, the evidence sufficiently could allow a jury to conclude that Greene took cash from Leger's purse either immediately before or after raping her. Leger testified that she drove back to her residence and arrived at "some time between 12:30 and 1:30 in the a.m." on March 4, 2004. (Dec. 11, 2006 Trial Tr. 147.) Leger sat in her car for a few minutes before Greene knocked on her window. (Dec. 11, 2006 Trial Tr. 148.) Leger had her purse on the passenger seat of the car, when Greene knocked on the window. (Dec. 11, 2006 Trial Tr. 152, 168.) Leger gave her purse to Green after he demanded money because she was scared. (Dec. 11, 2006 Trial Tr. 169.) The purse contained thirty to thirty-five dollars. (Dec. 11, 2006 Trial Tr. 153.) The last time Leger

saw her purse before Greene raped her, the purse "was sitting on top of one of the other cars in the parking lot." (Dec. 11, 2006 Trial Tr. at 169.)

Leger explained that it was at least forty-five minutes after she encountered Greene and before she called the police. (Dec. 11, 2006 Trial Tr. 175.) After the police arrived, they set up a perimeter around Leger's residence. (Dec. 11, 2006 Trial Tr. 214.) Officer Mohammed Oluwa found the victim's purse in a driveway a short way from Leger's residence. (Dec. 11, 2006 Trial Tr. 214–16.) There was no money in the purse or in the area around the purse. (Dec. 11, 2006 Trial Tr. 216.) The foregoing evidence amply demonstrates that Greene took Leger's purse and money either immediately before or after raping Leger. Accordingly, Claim 1 will be DISMISSED.

## VI. Ineffective Assistance of Counsel

To demonstrate the ineffective assistance of counsel, a defendant must show first that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not

necessary to determine whether counsel's performance was deficient if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In Claim 3, Green contends that his trial counsel "were ineffective when they failed to move the trial court for the funds necessary to hire a forensics expert to testify for the defense." (§ 2254 Pet. Attach. 18.) Green contends that a "DNA expert for the defense could have explained in laymen's terms what kinds of mistakes Ms. Van Itallie[7] and the Richmond Lab made in the analysis of the evidence, and how these mistakes could easily present a false identification. A DNA expert for the defense would have provided reasonable doubt as the certainty of Ms. Van Itallie's test results, and reasonable doubt as to the guilt of the petitioner." (§ 2254 Pet. Attach. 21.)

The Supreme Court of Virginia correctly observed that the aspect of Claim 3 wherein Greene faults counsel for not moving the Circuit Court for funds to hire a forensic expert lacks factual merit.[8] *Greene*, No. 091152, at 2. "The record, including the trial court's order entered on February 3, 2006, demonstrates that counsel filed a motion for funds for expert assistance and the court granted counsel's motion." *Id.* The record indicates that defense retained Dr. George

---

[7] Kristen Van Itallie was the prosecution's DNA expert.

[8] In its opposition to this claim during the state habeas proceedings, the Commonwealth noted:

> Before the petitioner was convicted in this case (No. FE-2006-1230), the Commonwealth indicted him for the same three crimes in a previous criminal case (No. FE-2005-1842). Prior to nolle prossing the first set of charges, the trial court granted petitioner's motion for funds for an expert witness. (*See* Exhibits 6 & 7). According to the record, petitioner's trial attorneys worked with the expert, but declined to use his testimony during trial. (12/12/06 Tr. at 127-129). So petitioner's claim that his attorneys did not request funds for an expert is without factual merit.

(Mot. Dismiss State Habeas ¶ 15; Mot. Dismiss State Habeas Exs. 6, 7.)

Riley to help prepare for the case. (Dec. 12, 2006 Trial Tr. 127.) Dr. Riley reviewed the documentation of Dr. Kristen Van Itallie regarding her processing of the DNA evidence in the present case. (Dec. 12, 2006 Trial Tr. 127–28.) Nevertheless, the defense ultimately determined it would not call Dr. Riley as a witness. This determination was made knowing, among other things, that Dr. Riley would have to answer truthfully about the general accuracy of the prosecution's DNA evidence that identified Greene as the man who attacked Leger. Counsel, instead, undertook a lengthy and thorough cross-examination seeking to point out deficiencies in the Commonwealth's maintenance of the biological evidence and laboratory procedures to suggest that Greene was incorrectly identified as the perpetrator of the rape. (Dec. 12, 2006 Trial Tr. 66–120.) Although this tactic ultimately proved unsuccessful, Greene fails to overcome the "strong presumption" that counsel's decision not to call a forensic expert was reasonable. *See Strickland*, 466 U.S. at 689; *id.* at 690 (observing that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *Bower v. Quarterman*, 497 F.3d 459, 471–72 (5th Cir. 2007), *cert. denied*, 553 U.S. 1006 (2008).

Greene also fails to demonstrate that he was prejudiced by the failure to call a DNA expert. The Supreme Court of Virginia concluded, "[p]etitioner only suggests that a DNA expert could have explained the kinds of mistakes made in handling and testing DNA evidence that could lead to a false identification. Petitioner does not provide any evidence to support his claim that an expert would have testified as petitioner contends." *Greene*, No. 091152, at 2. Greene has yet to introduce any evidence that suggests expert testimony would undermine the conclusion

that he was the contributor to the DNA that was found on the victim.[9] Accordingly, Claim 3 will be DISMISSED because Greene fails to demonstrate deficiency or prejudice.

## VII. Conclusion

The Motion to Dismiss (Docket No. 10) will be GRANTED IN PART AND DENIED IN PART. Claims 1 and 3 will be DISMISSED.

The parties will be DIRECTED to submit additional briefing on Claim 2 as follows:

1. Within twenty-one (21) days from the date of entry hereof, Greene must explain how he properly exhausted the factual and federal constitutional aspects of Claim 2. Greene must cite to the specific pages in the trial transcript, the appellate briefs, and the state habeas petition that support any assertion that he exhausted the factual and constitutional aspects of Claim 2.

2. Within forty (40) days from the date of entry hereof, Johnson shall:
   a. Brief whether Greene has properly exhausted the factual and federal constitutional aspects of Claim 2. Such brief shall address the impact of Greene's state petition for a writ of habeas corpus with respect to the foregoing claims;
   b. Submit further authority in support of his position that Claim 2 must be dismissed. Such briefing may raise the issue of procedural default and must address the merits of Greene's constitutional claim; and,
   c. Provide the Court with any joint appendix from the direct appeal, the full record from the Circuit Court, and the Supreme Court of Virginia's record of the habeas proceedings.

3. Should Greene wish to file a reply to any response filed by Johnson, he must file such reply within fifty-five (55) days from the date of entry hereof.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: December 28, 2010

---

[9] Indeed, at trial Greene attempted to suggest that the presence of his DNA on the victim was due to the fact that, on the night Leger was raped, Greene had sex with a prostitute and discarded his condoms in an area near where the rape occurred.

16